FILED
2021 Mar-22  PM 03:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| **SHEKIRA ARMSTEAD,** | ) |
| **Plaintiff,** | ) |
| vs. | ) Civil Action No. 3:19-CV-00658-CLS |
| **JAY SHREE UMIYA, INC. d/b/a JACKSON MARKET, FUEL CITY, and JACKSON EXPRESS; and NITINKUMAR PATEL,** | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Shekira Armstead, worked as a clerk at a convenience store and gasoline station operated by the defendant "Jay Shree Umiya, Inc.," a corporate entity that is wholly owned by defendant Nitinkumar Patel. Plaintiff alleges that she was not paid either a minimum wage for her regular working hours, or overtime for all hours worked in excess of forty, both in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA"). The case is before the court on "Plaintiff's Motion for Partial Summary Judgment on Individual and Company Liability and Defendants' Good Faith Defense" (doc. no. 19).

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court added a gloss to the language of that Rule, saying that summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). Inferences in favor of the non-moving party are not unqualified, however. "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983) (alteration supplied). Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is *material* to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921) (emphasis and alteration

supplied). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) (asking "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

## I.  FACTS

"Jay Shree Umiya, Inc.," operates a 24-hour gasoline station and convenience store under the trade name of "Jackson Express."[1] The corporate entity is wholly owned by Nitinkumar Patel.[2] Patel hired Shekira Armstead to work as a clerk at that location on March 1, 2016.[3] She remained so employed for eighteen-and-a-half months, until September 15, 2018.[4] She was supervised by Mr. Patel,[5] who trained her on how to operate the cash register, conduct inventory, and record her time.[6] Patel provided plaintiff with time sheets to manually record her start and stop times.[7]

---

[1] According to defense counsel, the trade name of the gasoline station and convenience store at which plaintiff worked was, prior to defendant Nitinkumar Patel's purchase of the entity, "Jackson Market," and he changed the name to "Jackson Express." "Fuel City" is the trade name of a separate entity that owns the physical property on which the "Jackson Express" convenience store is located and supplies the gasoline and diesel fuels sold at that location. *See also* doc. no. 21-1 (Shekira Armstead Affidavit), ¶ 1 (stating that she was hired to work at "Jackson Express").

[2] *See* doc. no. 23-1 (Affidavit of Nitinkumar Patel), ¶ 2.

[3] *See* doc. no. 21-1 (Affidavit of Shekira Armstead), ¶ 2.

[4] *See* doc. no. 8 (Answer), ¶ 32.

[5] *See* doc. no. 21-1 (Affidavit of Shekira Armstead), ¶ 4.

[6] *Id.* ¶¶ 6-9.

[7] *See* doc. no. 21-3 (Handwritten time records); doc. no. 21-4 (Handwritten time records continued).

Plaintiff's work schedule changed according to her availability, and Mr. Patel testified that he strove to accommodate her childcare responsibilities.[8]

At the beginning of plaintiff's employment, she was paid a wage of $7.50 an hour every two weeks by means of a check.[9] In late June of 2016, however, plaintiff approached Patel and asked him to pay her a lower hourly wage, in cash, for the purpose of permitting her to maintain the same level of governmental assistance and benefits she then was receiving through the Florence Housing Authority, her food stamps, and her government-subsidized cellular telephone and service.[10] The record reflects that plaintiff never disclosed her employment with defendants to the Florence Housing Authority.[11]

Plaintiff was paid in cash at a rate of $6.50 an hour from at least July of 2016 through the end of June 2017.[12] Then, from the beginning July 2017 through the end

---

[8] *See* doc. no. 23-1 (Nitinkumar Patel Affidavit), 4.

[9] *Id.* ¶ 7.

[10] *Id.* Armstead does not formally dispute this fact as instructed in the court's uniform initial order (*see* doc. no. 10, at 16), but she does claim it is not supported by the evidence in the argument section of her reply. *See* doc. no. 24 (Plaintiff's Reply), at 4-5. According to Patel, however, plaintiff explicitly stated that cash payments would allow her to maintain her government-subsidized housing through the Florence Housing Authority, her food stamps, and her government-subsidized cellular telephone and service. Doc. no. 23-1 (Nitinkumar Patel Affidavit), ¶ 8.

[11] *See, e.g.*, doc. no. 23-8 (Defendants' Exhibit B), at 3-5 (2017 Annual Recertification for Section 8 Housing Voucher listing no employment); *id.* at 11-13 (2016 Annual Recertification for Section 8 Housing Voucher listing no employment); *id.* at 24-25 (July 6, 2016 Housing Choice Voucher Program Status Change Form stating Armstead is no longer working).

[12] *See* doc. no. 21-3 (Handwritten time records), at 10-21 (multiplying the number of hours Ms. Armstead worked by $6.50).

of plaintiff's employment on or about September 15, 2018, she was paid in cash at a rate of $7.00 an hour.[13] Plaintiff was never paid overtime at the statutory rate of one-and-a-half times her hourly wage.[14]

There are only three pay stubs in the record, accounting for five weeks of work from June 12, 2017, through July 23, 2017.[15] Those pay stubs indicate that plaintiff was paid $7.50 an hour for at least those pay periods,[16] a rate that was only slightly above the federal minimum wage of $7.25 an hour.[17]

Plaintiff worked approximately 233 overtime hours during her employment with defendants,[18] but she was not paid at the statutory "time-and-a-half" overtime rate for those hours.

## II. DISCUSSION

Plaintiff's motion for partial summary judgment raises three issues: *i.e.*, (1) are defendants liable for their failure to pay plaintiff minimum and overtime wages; (2) is defendant Nitinkumar Patel an "employer" within the meaning of that term under

---

[13] *Id.* at 22-37 (multiplying the number of hours Ms. Armstead worked by $7.00).

[14] *See generally id.*

[15] *See* doc. no. 21-3 (Pay stubs), at 5-7.

[16] *Id.*

[17] *See* Minimum Wage, U.S. Department of Labor, Wage and Hour Division, https://www.dol.gov/agencies/whd/minimum-wage.

[18] The court calculated the hours over forty for each week as written in the time cards in doc. no. 21-3, at 8-37.

the Fair Labor Standards Act and, thus, individually liable; and (3) are defendants entitled to assert a "good-faith defense"? *See* doc. no. 20 (Brief in Support of Motion for Partial Summary Judgment).

## A. Plaintiff's Contention that Defendants Violated the Minimum Wage and Overtime Provisions of the Fair Labor Standards Act

Section 206 of the Fair Labor Standards Act of 1939 ("FLSA") requires employers to pay all covered employees at least a statutorily-prescribed minimum wage for each hour worked. 29 U.S.C. § 206(a)(1). Section 207 of the Act requires employers to pay employees one-and-one-half times their regular wage for every hour worked in excess of forty during each workweek. 29 U.S.C. § 207(a)(1) (alterations and emphasis supplied). "Any employer who violates the provisions of section 206 or section 207 . . . shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

The FLSA was enacted "to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 n.18 (1945). For that reason, Congress

made the provisions of the FLSA mandatory, which means that the rights created by that Act "cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine v. Arkansas-Best Freight Systems, Inc.*, 450 U.S. 728, 740 (1981) (internal quotation marks omitted).

In accordance with the FLSA's legislative purposes, a *prima facie* case of either a minimum or overtime wage violation simply requires a plaintiff to show that, "as a matter of just and reasonable inference . . . the wages paid to [the plaintiff] did not satisfy the requirements of the FLSA." *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 475 n.12 (11th Cir. 1982) (alteration and ellipsis supplied).[19] Plaintiff bears the burden of proving a *prima facie* case. *See Allen v. Board of Public Education for Bibb County*, 495 F.3d 1306, 1314-15 (11th Cir. 2007).

Plaintiff submitted handwritten time records to show that her hours of work were multiplied by either $6.50 or $7.00 an hour to calculate her bi-weekly pay. Both rates are below the federally-mandated minimum wage of $7.25 an hour.[20] Plaintiff's handwritten time records also show that she often worked more than forty hours in

---

[19] *See also* Eleventh Circuit Pattern Jury Instruction 4.14, at 240 (2020) (requiring plaintiff to prove two things: (1) plaintiff was an employee of defendants and was engaged in commerce; and (2) defendants failed to pay plaintiff the minimum wage and overtime wage required by law).

[20] *See* Minimum Wage, U.S. Department of Labor, Wage and Hour Division, https://www.dol.gov/agencies/whd/minimum-wage.

a week, and her pay for those hours was calculated at the same rate of pay as those hours under forty.[21]  Accordingly, plaintiff has met her *prima facie* burdens.

Defendants do not deny that plaintiff can establish *prima facie* cases for both of her FLSA claims.[22]  In fact, they admit in the first paragraph of their response brief that:  "Under most circumstances, [plaintiff] would likely prevail on her claims because evidence does suggest that she was paid less than federally-mandated minimums."  Doc. no. 23, at 1-2 (alteration supplied).  Instead, defendants argue that plaintiff should be barred from submitting evidence to establish the amount of her damages because she never reported the income from her employment with defendants to the Florence Housing Authority, the local housing authority which provided her a federally-funded Section 8 housing voucher.  Defendants assert two affirmative defenses to support that contention:  judicial estoppel; and, the so-called "*Hinkle* rule."

### 1. Judicial estoppel

The doctrine of judicial estoppel precludes a party from "asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding."  *Ajaka v. Brooksamerica Mortgage Corp.*, 453 F.3d 1339, 1344 (11th

---

[21] *See* doc. no. 21-3, at 8-37.

[22] *See* doc. no. 23 (Defendants' Response in Opposition to Motion for Summary Judgment), at 2-3 (contesting only facts related to Patel's status as plaintiff's "employer").

Cir. 2006) (quoting *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002)).  Courts normally consider the following factors when determining whether to apply the doctrine:  "First, the allegedly inconsistent positions must have been taken under oath in a prior proceeding, and second, they must have been calculated to make a mockery of the judicial system."  *Palmer & Cay, Inc. v. Marsh & McLennan Companies, Inc.*, 404 F.3d 1297, 1307 n.16 (11th Cir. 2005) (internal citations omitted).  "These factors are not exhaustive," *id.*, but defendants' accusations in this case fail to satisfy either of those factors.  Plaintiff's allegedly inconsistent claim was not made under oath during a prior court proceeding, and there is no evidence that plaintiff's failure to report her income to the Florence Housing Authority was "calculated to make a mockery of the judicial system."  *Id.*

Nevertheless, and despite the facial inapplicability of the doctrine of judicial estoppel, defendants argue that "the principle of the rule should hold true when a party has taken a position with a government agency contrary to one taken in a subsequent legal proceeding."  Doc. no. 23 (Response in Opposition to Summary Judgment), at 10.  Defendants do not cite any authority to support their argument.[23]

---

[23] In fact, other district courts within the Eleventh Circuit have held the opposite in a similar situation.  Specifically, the Southern District of Florida has held that a plaintiff's failure to pay federal income taxes on certain employment — that is, lying to a federal agency about his employment — did not prevent him from asserting he was so employed in an FLSA lawsuit.  *See Torres v. Rock & River Food Inc.*, No. 15-22882-Civ-Scola, 2016 WL 8716674, at *2 (S.D. Fla. May 11, 2016) (rejecting the *in pari delicto* defense) (citing *Solano v. A Navas Party Production,*

Fundamentally, however, the doctrine of judicial estoppel and other equitable defenses generally do not apply to bar FLSA claims, because the statutory rights established by that Act cannot be waived. *See, e.g.*, *Bailey v. TitleMax of Georgia, Inc.*, 776 F.3d 797, 803-04 (11th Cir. 2015) ("If an employer knew . . . that its employee underreported his hours, it cannot escape FLSA liability by asserting equitable defenses based on that underreporting."); *Perez-Nunez v. North Broward Hospital District*, No. 08-61583-CIV, 2009 WL 723873, at *2 (S.D. Fla. Mar. 13, 2009) ("The doctrines of waiver, estoppel and laches are generally not applicable to FLSA claims.").[24]

Even so, the former Fifth Circuit once applied the doctrine of equitable estoppel in a FLSA case. *See Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324 (5th Cir. 1972).[25] The plaintiff in *Brumbelow* sued to recover unpaid overtime compensation for hours she had worked, but not fully reported in an effort to hide that it was taking her longer than expected to perform her work. *See id.* at 1325. The

---

*Inc.*, 728 F. Supp. 2d 1334, 1339-40 (S.D. Fla. 2010); *Martinez-Pinillos v. Air Flow Filters, Inc.*, 738 F. Supp. 2d 1268, 1276 n.8 (S.D. Fla. 2010)).

[24] *See also Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 704 (1945) ("Where a private right is granted in the public interest to effectuate a legislative policy, waiver of a right so charged or colored with the public interest will not be allowed where it would thwart the legislative policy which it was designed to effectuate."); *id.* at 707 ("No one can doubt but that to allow waiver of statutory wages by agreement would nullify the purpose of the [FLSA].") (alteration supplied).

[25] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

former Fifth Circuit found that there was

> no evidence that the company in any manner encouraged workers to falsely report (unless we were to infer an illegal or improper encouragement from the mere existence of a norm, which we decline to do), and no evidence that it knew or should have known that appellant, unable to perform up to the employer's standard, was giving false information to conceal that fact in order to hold her job.

*Id.* at 1327.  In the absence of evidence showing that the defendant-employer was aware of the plaintiff-employee's underreporting and "[o]n the narrow facts of [that] case," the former Fifth Circuit held that the district court was correct to bar plaintiff from presenting evidence of the unreported overtime hours in support of her FLSA claim, and thereby profiting "from her own wrong in furnishing false data to the employer." *Id.* (alterations supplied).

The Eleventh Circuit distinguished the *Brumbelow* holding from cases in which evidence shows that the employer "knew or had reason to know that its employee underreported" work hours. *Bailey v. TitleMax of Georgia, Inc.*, 776 F.3d 797, 801-04 (11th Cir. 2015).  More broadly, the Eleventh Circuit held that, because of the FLSA's deterrent purpose, when "an employer knew or had reason to know that its employee underreported his hours, it cannot invoke equitable defenses based on that underreporting to bar the employee's FLSA claim." *Id.* at 805.

The present case is much more like *Bailey* than *Brumbelow.* Defendants are

not arguing that plaintiff misled them on the number of hours she worked, only to turn around and sue them. Instead, they admit that they paid plaintiff less than the minimum wage mandated by the FLSA, and never compensated her for overtime hours worked, but contend that plaintiff's misrepresentations to a third-party should prevent her from recovering the wages she should have been paid under federal law. Defendants' admission that they knew plaintiff was receiving neither the federally-mandated minimum-wage nor overtime compensation prevents them from asserting any equitable defense, including the doctrine of judicial estoppel.

### 2. The "*Hinkle* rule"

The "*Hinkle* rule" is a doctrine created by the Alabama Supreme Court which stands for the proposition that "[a] person cannot maintain a cause of action if, in order to establish it, he must rely in whole or in part on an illegal or immoral act or transaction to which he is a party." *Hinkle v. Railway Express Agency*, 6 So. 2d 417, 421 (Ala. 1942) (alteration supplied). That state-law rule "derives principally not from consideration for the defendant, but from a desire to see that those who transgress the moral or criminal code shall not receive aid from the judicial branch of government." *Oden v. Pepsi Cola Bottling Co.*, 621 So. 2d 953, 955 (Ala. 1993) (internal citation omitted). The *Oden* opinion clarified that the Alabama Supreme Court interprets the rule created in *Hinkle* as barring "any action seeking damages

based on injuries that were a direct result of the injured party's knowing and intentional participation in a crime involving moral turpitude." *Id.* Accordingly, defendants contend that this court should estop plaintiff from "using her criminal activity for civil gain." Doc. no. 23 (Response in Opposition to Summary Judgment), at 13.

Specifically, defendants argue that plaintiff committed theft of government property by not reporting her full income to the Florence Housing Authority, and that she should not now benefit from that theft and deception. *See id.* at 14-15. Notably, plaintiff has not been charged with any such crime — at least, not yet.

The *Hinkle* rule does not apply for three additional reasons. *First*, plaintiff does not have to rely on her alleged crime to prevail on the claims she asserts in this case. The evidence that defendants did not pay her minimum or overtime wages stands apart from her misrepresentations to the Florence Housing Authority. *Second*, the rule created by the Alabama Supreme Court has not been applied in any FLSA case, or to bar any federal cause of action. *Finally*, application of the rule would be contrary to this court's interpretation of the Eleventh Circuit's bar on equitable defenses when the employer knew it was violating the FLSA. *See Bailey*, 776 F.3d at 805. Accordingly, plaintiff will not be estopped from presenting evidence that she was not paid the wages to which she was entitled under the FLSA by the *Hinkle* rule.

**B.    Plaintiff's Contention that Defendant Nitinkumar Patel Is an "Employer" Within the Meaning of the FLSA and, Thus, Individually Liable**

The term "employer" is defined by the FLSA as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986) (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)). A corporate officer must also "be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *Id.* at 638. Defendant Nitinkumar Patel meets those standards.

He owned and operated the gas station at which plaintiff was employed.[26] He hired plaintiff, and had the ability to fire her.[27] He supervised plaintiff and taught her how to perform the duties of her job.[28] Although Patel claims that he worked with plaintiff to set her work schedule, and that she requested the hourly rate she was paid,[29] he still issued her pay checks and had the power to change either plaintiff's

---

[26] *See* doc. no. 23-1 (Nitinkumar Patel Affidavit), ¶ 2.
[27] *See* doc. no. 21-1 (Shekira Armstead Affidavit), ¶¶ 2, 5.
[28] *See id.* ¶¶ 4, 6-10.
[29] *See* doc. no. 23-1 (Nitinkumar Patel Affidavit), ¶¶ 4-8.

schedule or rate of pay.[30]  Accordingly, Patel can be held individually liable as plaintiff's "employer" under the FLSA.

### C. Plaintiff's Contention that Defendants Are Not Entitled to Assert a "Good Faith" Defense

The FLSA provides that an employee who proves violations of the Act is entitled to recover the aggregate amount of unpaid minimum wages and overtime compensation, as well as "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).  Even so,

> if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages . . . .

29 U.S.C. § 260 (alteration and ellipsis supplied).

Plaintiffs seek a ruling that defendants are not entitled to a good faith defense against liquidated damages.  Defendants did not respond to plaintiff's argument. Issues and contentions not raised in a party's brief are deemed to have been abandoned. *E.g.*, *Continental Technical Services, Inc. v. Rockwell International Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991) ("An argument not made is waived.").

> In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation.  That is, we rely on the parties to frame the issues for

---

[30] *See id.* ¶ 7 (stating that he initially paid plaintiff via check then later paid her in cash).

decision and assign to courts the role of neutral arbiter of matters the parties present.

*Greenlaw v. United States*, 554 U.S. 237, 243 (2008). *See also, e.g.*, *Chapman v. AI Transport*, 229 F.3d 1012, 1027 (11th Cir. 2000) (*en banc*) ("Parties opposing summary judgment are appropriately charged with the responsibility of marshaling and presenting their evidence before summary judgment is granted, not afterwards.").

Accordingly, defendants abandoned the good faith defense on summary judgment, and they will not be allowed to raise it at trial on the issue of damages.

### III. CONCLUSION

In accordance with the foregoing, the court concludes that plaintiff's motion for partial summary judgment is due to be, and it hereby is, GRANTED, and it is CONSIDERED, ORDERED, and ADJUDGED that judgments on the issues of liability, defendant Nitinkumar Patel's individual liability, and defendants' use of a good faith defense are entered in favor of plaintiff, Shekira Armstead, and against defendants Jay Shree Umira and Nitinkumar Patel. Plaintiff is granted leave to prove damages.

The court is not currently conducting jury trials, and will not conduct such trials until it is safe to gather large groups of persons in small spaces. The court will issue an order setting a date and time for pretrial conference on the issue of the

amount of damages to be awarded plaintiff when it believes that it is safe to do so. In the meantime, the court ORDERS the parties to attempt to resolve the controversy through mediation.

**DONE** and **ORDERED** this 22nd day of March, 2021.

_____
Senior United States District Judge